J. J. ASHLEY, ET AL., *v.* G. J. BUCK, ET AL.

**Real Estate Entries—Patent from State.**

> Where one improved, occupied and held land under the act of 1800 (2 State Law 941), and persistently claimed the same, but failed to pay for it and receive patent, he could do so under the act of 1819; and where such land was entered by and patented to another under the said act of 1815 such patentee secures no title because such act only authorized the entry of the "waste and unappropriated lands," and the land was at that time appropriated by the former entryman, and was not waste land.

APPEAL FROM WEBSTER CIRCUIT COURT.

October 16, 1877.

OPINION BY JUDGE LINDSAY:

The act of December 20, 1800 (2 State Law of Kentucky 941), made it lawful for any free person of the description set out in the preamble, who was above the age of eighteen years, to improve, occupy and hold of the vacant lands of the commonwealth four hun-dred acres. The second section of the act required the person de-siring to make the appropriation to apply to the county court of the county in which his settlement was made and obtain a certificate setting out the special location and quantity of the tract of land, and describing it as accurately as practicable.

The third section required him within twelve months after the date of the certificate to produce it to the register of the land office and pay for the land at the rate of twenty dollars per each one hundred acres, and he was then to be entitled to a warrant for the land de-scribed in his certificate of entry or appropriation. The fourth

section required the warrant to be located within six months after its date, and the land to be surveyed within the succeeding twelve months, and thereupon the claimant was to be entitled to a patent. The eighth section provides that if the certificate should not be procured and the warrant obtained, as required by the act, it should be lawful for any other person to take the necessary steps and appropriate the lands.

Pursuant to the provisions of this act Henry Ashley settled on the lands in controversy, and at the December term, 1803, of the Henderson County Court, procured the proper certificate. It seems, however, that he failed to pay the purchase price to the commonwealth and to obtain the warrant, make the entry, and have his patent issued.

The act of 1800 was followed by a series of acts by which the state waived its right to disregard the title or claims of persons who had procured certificates and extended the time within which they might make payment and carry their inchoate claims into grant.

On the 14th of January, 1819, it was enacted: "That the further time of three years shall be, and is hereby, allowed to the owners of headright claims to survey the same and return plats and certificates of the surveys to the register's office." 2 State Law, 986.

In 1820 Taylor entered the land, which had theretofore been appropriated by Ashley, and in 1821 he procured a patent for the same. This entry and grant were made and procured within the time covered by the act of 1819.

The act of February 6, 1815 (2 State Law, 1019), only authorized the appropriation of the "waste and unappropriated lands" of the state; and the 11th section provided that for the quieting of litigation, "all entries heretofore made, and all titles founded upon surveys heretofore made, which by the laws, at the time being, were authorized to be made, shall be deemed superior to surveys made upon warrants obtained by this act, notwithstanding any alleged vagueness in the entries or certificates on which the surveys were founded, and notwithstanding such surveys may not be conformable to entry. There were other exceptions which do not and can not apply in this case.

As the land in contest was not "unappropriated" in 1820 and 1821, it was not subject to entry under the Act of 1819, except upon the condition that in all litigation between the holder of the county court certificate and the claimant, under the provisions of said act, the entry

or title of the former should be deemed superior to the warrant or survey of the latter.

In the case of *Shields v. Dodd and Bowman,* 5. Litt. 25, a county court certificate was issued by the Mercer County Court to Shields in October, 1804. Dodd and Bowman procured a land office warrant under the act of 1815, caused their survey to be made, and carried it into grant. Afterward Shields, who had taken advantage of the acts of the legislature giving indulgence to headright claimants, procured a patent upon his certificate.

In the action in which Shields was the complainant, the decision of this court was adverse to the elder patent, the court holding that the tenth section of the act of 1815 prevented the claim of the defendants from coming into the lists of contests with the plaintiff.

Counsel lay some stress upon the fact that said tenth section gave the preference only to "entries" and "titles founded on surveys." The appropriation by actual settlement, and by procuring the certificate of the county court, was equivalent to an entry, and was so regarded by the legislature when the act of January 14, 1819, was passed. That act protected all headright claimants, whether they had or not made surveys or returned their certificates, or plats to the register's office. And this is the construction placed on the 10th section of the act of 1815, by this court, in the case of *Overley v. Payne,* 3 J. J. Marsh. 717.

While it may be conceded that the proof does not show that Ashley was in the actual possession of the land either in 1820 or 1821, when Taylor made his entry and procured his patent, or in 1839, when Ashley caused his patent to be issued to himself and Sugg, yet there is'no proof tending to show that he had abandoned his claim or waived his appropriation, or done any act to preclude himself or those holding under him from insisting on receiving the benefits of that provision of the act of 1815 preventing a claim of a patentee under a treasury warrant from coming into the list of contests with the claimant under a headright claim. Upon the contrary, the proof tends to show that in or out of actual possession Ashley persistently mentioned and adhered to his original appropriation.

He was, therefore, in an attitude in 1839 such as to authorize him to avail himself of the benefits intended to be enforced on headright claimants by the act of 1819.

Judgment *reversed* and cause remanded with instructions to dismiss appellees' petition.

*G. W. Cook, for appellants.   M. C. Givens, for appellees.*